IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **LILLIAN THOMPSON,** | * |
| **Plaintiff,** | * |
| v. | * Civil No. TMD 13-3450 |
| **CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,** | * |
| **Defendant.** | * |
| | ************ |

**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Lillian Thompson ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 20) and Defendant's Motion for Summary Judgment (ECF No. 22).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 22) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## **Background**

Plaintiff was born in 1962, has a ninth-grade education, and previously worked as a fast-food cashier. R. at 12, 15, 17. Plaintiff applied for SSI on December 6, 2010, alleging disability beginning on August 6, 2008, due to diabetes, high blood pressure, chronic eczema, and headaches. R. at 44, 124-32, 141. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 36-40, 66-69, 74-84. On September 7, 2012, ALJ C.J. Sturek held a hearing at which Plaintiff and a vocational expert ("VE") testified. R. at 9-35. On September 24, 2012, the ALJ issued a decision finding Plaintiff not disabled since the application date of December 6, 2010. R. at 41-65. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on September 24, 2013. R. at 3-8. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On November 15, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.     Opinion Evidence**

The ALJ noted in his decision the opinion of Nicole Thomas, PA-C:

> On January 7, 2011, Nicole R. Thomas, PA-C, opined that [Plaintiff] could sit for 2 hours, stand, walk, bend, or reach for 1 hour. She believed that [Plaintiff] could never climb, squat, or crawl, and could only lift 10 pounds at the heaviest. She further opined that [Plaintiff] would have to avoid all exposure to extreme cold, extreme heat, humidity, chemicals, dust, fumes, odors, and heights, but could have occasional exposure to noise.

R. at 56 (citations omitted); *see* R. at 582-86; *see also* R. at 397-404.

The ALJ also noted in his decision the findings of George Moore, D.O.:

> In a January 10, 2011 consultative examination report, George [Moore], D.O., stated that [Plaintiff] had multiple symptoms of depression and some of PTSD. He reported that mental status testing revealed that [Plaintiff's] concentration was poor, that she had difficulty functioning in the social realm, and that she did not have the ability to cope with work-related stressors and demands. He gave [Plaintiff] a Global Assessment of Functioning (GAF) score of 47, but opined that she would have a fair chance at improvement of her mental status with good, comprehensive treatment.

R. at 57 (citations omitted); *see* R. at 405-12.[2]

On January 20, 2011, E. Edmunds, Ph.D., evaluated on a psychiatric review technique form Plaintiff's mental impairments under paragraph B of Listings 12.04 and 12.06 relating to

---

[2] The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000). A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34; *see Martise v. Astrue*, 641 F.3d 909, 917 n.5 (8th Cir. 2011); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999). The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

affective disorders and anxiety-related disorders. R. at 425-38. Dr. Edmunds opined that Plaintiff's major depressive disorder and chronic, severe post-traumatic stress disorder caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. R. at 428, 430, 435. Dr. Edmunds did not find evidence to establish the presence of the criteria under paragraph C of these Listings. R. at 436. Dr. Edmunds thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 421-24) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to (6) respond appropriately to changes in the work setting. R. at 421-22. Plaintiff otherwise was not significantly limited. R. at 421-22. Dr. Edmunds's mental RFC assessment thus provided:

> [Plaintiff] is a 48 year old woman with history of trauma, multiple medical conditions (reviewed elsewhere) with history of depression related to her daughter's death four years ago. Though her PCP had recommended an SSRI in 5/2010, [Plaintiff] did not begin this for a few months, and had denied depression and anxiety at an OV as recently as 10/2010. [Plaintiff] reports distant psych tx, but there has been no formal psych treatment in the past 30 years. At a recent CE, [Plaintiff] presented as anxious, with variable concentration and memory, no psychosis, and signs consistent with depression and PTSD. ADLs are functional from a mental standpoint, with most restrictions from physical conditions.
>
> Statements are credible, and information shows Severe Mental Impairments under 12.04 and 12.06, which do not meet or equal listings. MRFC assessment is made.

> A.  Understanding and Memory:  [Plaintiff] has some difficulty with memory but she compensates by keeping a calendar.  [Plaintiff] would be able to understand and carry out simple three step instructions, and at times, more complex tasks and routines.
>
> B.  A/C, Persistence and Pace:  Conditions along with distractions from physical conditions, do impose intermittent fluctuation of A/C and sustained persistence.  [Plaintiff] would be able to complete a normal workweek with reasonable breaks, without significant exacerbation of psych symptoms.
>
> C.  Social:  [Plaintiff] is able to relate to others and accept supervision, but she has history of past and recent trauma, which affects social interactions.  [Plaintiff] would perform best in settings with limited interpersonal contact.
>
> D.  Adaptability.  [Plaintiff] would be expected to have some difficulty adapting to stress, though she would be able to manage within a basic routine.  [Plaintiff] is able to get out in the community independently, and is able to request assistance and make decisions.
>
> Overall, [Plaintiff] would be able to perform simple tasks on a sustained basis from a mental standpoint.

R. at 423.

**B.    Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> As for her activities of daily living, [Plaintiff] testified at the hearing that her sister helps her with shopping, dressing, laundry, and grooming.  [Plaintiff] stated that she watches television and reads during the day, and can pay attention for at least 30 minutes.  She said that she goes to church for 2 hours every Sunday.  She used to swim, but her doctors recommended that she avoid exercise.  She testified that she has trouble sleeping at night, so she naps during the day.  She does not do much cooking, cleaning, dishes, or laundry.
>
> She testified that she is able to lift or carry up to 15 pounds, walk about 1 ½ blocks, sit 10-15 minutes, and stand 15-20 minutes.  She stated that she can bend her knees if standing, raise her left arm, go up and down steps, and write with a pen or pencil.  She said that she cannot bend to touch her toes, reach her knees, or raise her right arm over her head.  She also said she has difficulty using her right arm and hand, due to numbness.

R. at 49-50; *see* R. at 12-29.

**C.     VE Testimony**

The VE testified that a person with the exertional limitations outlined in the ALJ's RFC assessment below in Part III could perform less than the full range of light and sedentary work.[3] R. at 30. A fifty-year-old individual with Plaintiff's education and work experience, exertional limitations permitting less than a full range of light and sedentary unskilled work, and the non-exertional limitations outlined below in Part III could not perform Plaintiff's past work, but could perform the light, unskilled jobs of inspector and packer and packaging worker and the sedentary, unskilled jobs of quality-control worker and finish machine tender, as described in the *Dictionary of Occupational Titles*.[4] R. at 30-33. If the cumulative effect of these limitations reduced productivity to 80% or less, however, then there would be no work available at any exertional level. R. at 33. If the ALJ accepted as fully credible Plaintiff's testimony that she needed to sleep regularly during the day, then she could perform no full-time work if this limitation reduced her productivity to 80%. R. at 33-34. A hypothetical individual with the limitations outlined in Ms. Thomas's opinion would not be able to sustain full-time employment. R. at 34-35.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* § 416.967(a).

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

### III

### Summary of ALJ's Decision

On September 24, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the application date of December 6, 2010; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy. R. at 46-59. The ALJ thus found that she was not disabled since the application date of December 6, 2010. R. at 59.

> In so finding, the ALJ found that Plaintiff had the RFC
>
> to perform light work, as defined in 20 CFR 416.967(b), and sedentary work, as defined in 20 CFR 416.967(a), lifting 10 pounds frequently and 20 pounds occasionally. [Plaintiff] can walk/stand (with normal breaks) and sit (with normal breaks) 6 hours in an 8-hour workday. She is limited in the ability to push or pull with the dominant (right) upper extremity, such that any force required greater than 10 pounds precludes the activity. She can never climb ladders, ropes or scaffolds, or crawl, and can occasionally climb stairs or ramps, balance, bend, stoop, kneel, crouch, or squat. She can occasionally reach overhead with the dominant upper extremity. She must avoid concentrated exposure to extremes in temperature, including hot and cold, vibration, fumes, odors, dust, gases, poor ventilation, etc., and hazards such as moving machinery and unprotected heights. Due to pain, fatigue, the effects of medication, and emotional factors, she is limited in the ability to understand, remember and carry out detailed instructions, maintain concentration and attention for extended periods, complete a normal workday and workweek without interruptions from psychologically[]based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting, but she would be able to remain productive more than 80% of the time.

R. at 48-49.

The ALJ considered Plaintiff's credibility and found that her medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible, to the extent they are inconsistent with the [ALJ's RFC] assessment." R. at 55.

> In terms of [Plaintiff's] alleged mental impairments, the record is noticeably lacking in evidence of treatment by a mental health professional. [Plaintiff] was diagnosed as having mental conditions, and received medication from her primary care physician, but she did not keep appointments with psychiatrists. Additionally, [Plaintiff's] own words demonstrate that she was not consistently suffering from mental health symptoms. Although [Plaintiff] testified at the hearing that she is currently seeking treatment with a psychiatrist, the lack of psychiatric treatment evidence in the record does not support her allegations of mental health disability.

R. at 55 (citation omitted); see R. at 394.

In considering Dr. Moore's opinion, the ALJ found:

> Dr. [Moore's] opinion is given great weight to the extent that he predicted improvement in response to psychiatric treatment. This assessment is particularly prudent in light of the insubstantial amount of evidence of treatment by a mental health professional. The remainder of Dr. [Moore's] opinion is given little weight because of the generalities employed in assessing [Plaintiff's] functional capabilities. The undersigned acknowledges that the evidence shows some limitation in [Plaintiff's] concentration, but does not find usefulness in Dr. [Moore's] vague analysis of [Plaintiff's] ability to function.

R. at 57.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

---

appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling 96-8p.[6] Pl.'s Mem. Supp. Mot. Summ. J. 3-11, ECF No. 20-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 6. In particular, she contends that the ALJ's determination that "she is capable of being productive more than 80 percent of the time is without medical basis." *Id.* Plaintiff then maintains that, despite finding that the record supported Dr. Edmunds's

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

opinions, the ALJ failed to include the doctor's opinions in his RFC assessment. *Id.* at 8. Plaintiff also asserts that the ALJ failed to evaluate properly Dr. Moore's opinions as stated in his January 2011 psychiatric evaluation of Plaintiff. *Id.* at 8-11. For the reasons stated below, Plaintiff's contentions are unavailing.

**A.      Plaintiff's Productivity**

Plaintiff first asserts that substantial evidence does not support the ALJ's RFC assessment that "she would be able to remain productive more than 80% of the time" (R. at 49). *Id.* at 6. "There is not a shred of medical evidence in the administrative record which addresses [her] potential productivity as a consequence of her medical impairments." *Id.* "The productivity number is thus based not upon the medical evidence, but on the means to achieve a desired result." *Id.* at 7.

Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act, however. *English*, 10 F.3d at 1082. According to the VE, a 20% reduction in productivity would preclude all work. R. at 32, 33. Despite Plaintiff's contention that the ALJ failed to explain his finding that Plaintiff was able to remain productive more than 80% of the time (Pl.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 20-1 (citing R. at 31-32)), she points to no evidence that her impairments would reduce her productivity by 20%, *see Jeffress v. Astrue*, No. 3:11-CV-806-HEH, 2012 WL 3866536, at *15 (E.D. Va. Aug. 21, 2012), *report and recommendation adopted*, No. 3:11CV806-HEH, 2012 WL 3851222 (E.D. Va. Sept. 5, 2012), and "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Plaintiff's contention in this regard thus is without merit.

B.   **ALJ's Consideration of State Agency Consultant's Opinion**

Plaintiff next contends that,

> "[d]espite finding that Dr. [Edmunds's] opinion was supported by the record, the [ALJ] did not find that [she] had moderate limitations in social functioning as Dr. Edmunds had, and failed to include any cognizable limitation upon [her] abilities to work in coordination with or proximity to others or to get along with coworkers or peers. In addition, although the [ALJ] found that Dr. [Edmunds's] opinions were supported by the record, he failed to include them in his [RFC] assessment, without explanation.

Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 20-1.

The burden is on the party attacking an agency's determination to show that prejudice resulted from the error. *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009). "Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011). "[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964)). Furthermore, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Rather, "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628

F.3d 346, 353 (7th Cir. 2010) (Posner, J.); *see Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam).

Here, a finding that Plaintiff's difficulties in maintaining social functioning were moderate rather than mild would not have changed the ALJ's finding that Plaintiff's mental impairments did not meet or equal a listed impairment. *See* R. at 47-48. Plaintiff maintains, however, that the Court should remand this case because the ALJ failed "to include any cognizable limitation upon [her] abilities to work in coordination with or proximity to others or to get along with coworkers or peers," found in the "summary conclusions" of Section I of the form completed by Dr. Edmunds in assessing her mental RFC (R. at 421-22). "However, the relevant portion of the [consultants'] opinions is not Section I, which sets forth a series of 'check the box' rankings, but Section III, which provides a detailed narrative functional capacity assessment." *Blum v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-1833, 2013 WL 2902682, at *2 (D. Md. June 11, 2013). "Because Section I does not include the requisite level of detail to inform the ALJ's opinion, an ALJ need not address each of the Section I limitations." *Id.*

Dr. Edmunds opined in Section III of the mental RFC assessment form that Plaintiff "would perform best in settings with limited interpersonal contact" and that, "[o]verall, [she] would be able to perform simple tasks on a sustained basis from a mental standpoint." R. at 423. In turn, the ALJ found that Plaintiff was limited in her ability, among other things, to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." R. at 49. Plaintiff also points to no evidence that a moderate limitation in social interaction would alter the ALJ's finding about the availability of jobs in the national and regional economies in light of Plaintiff's RFC. Because Plaintiff "provides no analysis of how a 'more detailed' assessment . . . might have resulted in a different outcome," *Seifert v. Comm'r, Soc. Sec. Admin.*,

Civil No. SAG-11-1051, 2013 WL 1881065, at *2 (D. Md. May 2, 2013), her argument in this regard is unavailing as well.

C.  **ALJ's Consideration of Consultative Examiner's Opinion**

Dr. Moore, who conducted a psychiatric consultative examination of Plaintiff in January 2011, opined that, "[i]f she did have good comprehensive treatment, she would have a fair chance of having some improvement in her mental status." R. at 409. "In my opinion, at this time she has not had the ability to cope with work-related stressors and demands." R. at 408. The ALJ gave "great weight" to Dr. Moore's opinion regarding Plaintiff's "predicted improvement in response to psychiatric treatment . . . in light of the insubstantial amount of evidence of treatment by a mental health professional." R. at 57. The ALJ afforded the remainder of Dr. Moore's opinions "little weight" "because of the generalities employed in assessing [Plaintiff's] functional capabilities." R. at 57. The ALJ acknowledged that "the evidence shows some limitation in [Plaintiff's] concentration," but did "not find usefulness in Dr. [Moore's] vague analysis of [Plaintiff's] ability to function." R. at 57. The ALJ did find, however, that Plaintiff's major depressive disorder was a severe impairment. R. at 46. Plaintiff contends that the ALJ erred in evaluating Dr. Moore's opinions and failed to evaluate the doctor's opinions under 20 C.F.R. § 416.927(c) relating to the weighing of medical opinions. Pl.'s Mem. Supp. Mot. Summ. J. 8-11, ECF No. 20-1.

The Commissioner considers the following factors in deciding the weight given to a medical opinion: (1) whether the source examined the claimant; (2) the length of the treating relationship and its nature and extent; (3) the supportability of the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the source is a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c). "An ALJ's

16

determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624, No. 97-2551, 1998 WL 702296, at *2 (4th Cir. Oct. 6, 1998) (per curiam) (unpublished table decision) (citation omitted).

As the Commissioner points out, Plaintiff does not show how these six factors support Dr. Moore's opinions that were given little weight by the ALJ. Def.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 22-1. In noting that Dr. Moore was a consultative examiner (R. at 57), the ALJ considered the nature, extent, and length of the examining relationship under 20 C.F.R. § 416.927(c)(1) and (2). *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) ("The ALJ determined that the opinion of [a treating physician] was entitled to little weight because he examined [the claimant] only one time and produced a brief report."); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (holding that claimant's physicians' "opinions are not entitled to deference because as one-time examiners they were not treating physicians").

The ALJ then considered the support that Dr. Moore provided for his opinion. R. at 57. "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the Commissioner] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the Commissioner] will give that opinion." 20 C.F.R. § 416.927(c)(3). Because of "the insubstantial amount of evidence of treatment by a mental health professional," the ALJ gave "great weight" to Dr. Moore's opinion that Plaintiff's mental status would improve if she had comprehensive psychiatric treatment. R. at 57, 409. The ALJ afforded "little weight" to the remainder of Dr.

Moore's opinions regarding Plaintiff's functional capabilities because they were conclusory and based on generalities. R. at 57, 408. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see Johnson*, 434 F.3d at 657 ("Because [the clinical psychologist] acknowledged the significant errors in his tests and because the record contains little evidence of [the claimant's] alleged depression, substantial evidence supports the ALJ's rejection of [the psychologist's] opinion."). Because "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings," *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002), Plaintiff's contention that the ALJ did not consider the supportability of Dr. Moore's opinion is without merit.

Finally, contrary to Plaintiff's assertion, the ALJ considered the consistency of Dr. Moore's opinion with other evidence in the record under 20 C.F.R. § 416.927(c)(4). "The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word." *Reid*, 769 F.3d at 865. Plaintiff does not contend that the ALJ erred in considering other sources' opinions, nor does she argue that the ALJ's review of her testimony, treatment records, and the various examiners' findings and opinions (R. at 49-58) warranted finding greater limitations in Plaintiff's RFC than those found by the ALJ. For these reasons, Plaintiff's assertion that the ALJ failed to comply with 20 C.F.R. § 416.927(c) when he considered Dr. Moore's opinion is unavailing.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**,

Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 22) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**. The Commissioner's decision is **AFFIRMED**. A separate order shall issue.

Date: March 24, 2015                                           /s/
                                                     Thomas M. DiGirolamo
                                                     United States Magistrate Judge